[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-16982
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 13, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-22034-CV-JAL

YAN ZOCARAS,
a.k.a. Carlos Vasquez,

Plaintiff-Appellant,

versus

CASTRO,
Detective,
PINO,
Detective,
BLACK,
Officer,
MENDEZ,
Officer,
BONNER,
Officer, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(September 13, 2006)**

Before DUBINA, CARNES and HULL, Circuit Judges.

CARNES, Circuit Judge:

If, as the Bible says, "[a]n honest answer is like a kiss on the lips," Proverbs 24:26 (N.I.V.), a pleading founded on a lie is like a kick in the gut. The question this appeal presents is whether a district court can dismiss a case with prejudice because the plaintiff filed and litigated his complaint under a false name.

**I.**

The plaintiff's real name, we now know, is Cesar Vasquez. The first time he was arrested in Florida was in 1997 for cocaine trafficking. On that occasion he gave the arresting officers the name Yan Michael Zocaras, and he was booked into the Department of Corrections system under that name. The plaintiff has four Florida felony convictions, and the arrests leading to some of them may have occurred between his arrest for cocaine trafficking in 1997 and his arrest for armed home invasion in 2000, which gave rise to this case. Regardless, when the plaintiff was arrested in 2000 he told the officers that his name was Carlos Vasquez. As a result, when he was booked into the Department of Corrections following that arrest his name was listed as "Yan Zocaras, a/k/a Carlos Vasquez." His guilty plea and the resulting incarceration from the 2000 arrest were both entered under that name.

2

With four prior felony convictions, the plaintiff is known to the Florida Department of Corrections by several names: Luis Garcia, Carlos Vasquez, Michael Vasquez, Yan Michael Zocaras, and Yan M. Zocaras. In 1996, he obtained a Florida driver's license in the name Yan Zocaras.

In July 2003, the plaintiff filed this 42 U.S.C. § 1983 action against several police officers for injuries he alleged were sustained when he was arrested in 2000 on the home invasion charges. Five months later he filed a second § 1983 complaint based on the same facts. Both complaints were filed using the name "Yan Zocaras, a/k/a Carlos Vasquez." Neither mentioned the name Cesar Vasquez. The two cases were consolidated, and then in February 2005 counsel entered an appearance for the plaintiff, who had been proceeding pro se.

From the beginning of this case until the jury trial, which took place in September 2005, the plaintiff filed more than thirty pleadings and motions under the false name "Yan Zocaras a/k/a Carlos Vasquez." At the trial the plaintiff was the first witness to testify. The initial testimony went like this:

Q. Please state your name for the record.

A. Yan Zocaras.

Q. Mr. Zocaras, are you known by any other names?

A. Yes, ma'am. Yes.

3

Q. What names are those?

A. Carlos Vasquez.

Q. Are you known by any other names?

A. Yes; with my true name.

Q. What is your true name?

A. Cesar Vasquez.

Q. Have you been known by any other names other than Carlos Vasquez and Cesar Vasquez?

A. No, ma'am.

Cross-examination began like this:

Q. Cesar Vasquez is your true name?

A. Yes.

Q. Yan Zocaras is a false name?

A. Yes.

Q. You're proceeding here in court under a false name?

    Ms. Puentes: Objection, your Honor. Argumentative.

    The Court: Sustained. Rephrase your question.

Q. So Mr. Vasquez, isn't it true that you have–you had a Florida ID under the name Yan Zocaras?

A. Yes.

Q. And when you were arrested by the police, you gave them the name Carlos Vasquez? Isn't that correct?

A. Yes.

Q. You lied about your name?

A. Yes.

On re-direct the next day, the plaintiff gave this explanation to the jury about why he had used a false name in the case:

> Well, when I was sentenced, then I went to prison. I notified them that that was not my name and that I wanted to have a—change to my name. I asked them to change it to my name. And they told me that I had to continue to use that name until my sentence was over. And that's why I put the complaint under that name, because I couldn't have it under my name, as this was the name that I had in prison.

After the plaintiff rested, the defendants called two witnesses before resting.

The defendants then moved to dismiss pursuant to Federal Rules of Civil Procedure 11 and 41(b) because the plaintiff had proceeded under the false name Yan Zocaras. The district court conducted a hearing on the motion the following day and gave the plaintiff an opportunity to explain his actions. At one point, the district court stated for the record: "Let me announce the case once more. Yan Zocaras, now known as Cesar Vasquez, versus Emilio Lopez and Miguel Rodriguez, Case No. 03-22034."

5

At the hearing on the motion to dismiss the court directed the attorneys for the plaintiff to discuss with him whether he would waive his Fifth Amendment rights which would permit further inquiry into his use of a false name during the litigation. They told the court that they were civil lawyers who did not feel qualified to advise the plaintiff on the "slew of possible criminal issues here." The court then sent for an assistant federal public defender and recessed to provide an opportunity for her to advise the plaintiff on whether to waive the Fifth Amendment. After receiving further advice, the plaintiff asserted his Fifth Amendment rights as to any additional questioning about his use of false names.

Counsel for the plaintiff made a number of arguments against dismissal. The primary one was an assertion that the plaintiff had not acted willfully or in bad faith but only negligently based on a misunderstanding of what he had been told by the Department of Corrections. After hearing all that the plaintiff's counsel had to say, the district court entered detailed findings and conclusions, a copy of which we have attached to this opinion as Appendix A. Among other things, the court found that the plaintiff's use of a false name throughout the two years leading up to the trial had not been negligent or the result of a misunderstanding but was deliberate and willful. The court followed up its findings and conclusions from the bench with a written order to the same effect, a copy of which is Appendix B to

6

this opinion.  This appeal by the plaintiff followed.

## II.

We review the district court's decision to dismiss a case for failure to comply with the rules of the court for an abuse of discretion.  Betty K Agencies, Ltd. v. M/V Monada, 432 F.3d 1333, 1337 (11th Cir. 2005). "Discretion means the district court has a 'range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'"  Id. (quoting Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc., 420 F.3d 1317, 1324 (11th Cir. 2005)).  We review the district court's findings of fact for clear error.  U.S. v. Martinelli, 454 F.3d 1300, 1306 (11th Cir. 2006).  We have articulated a two-part analysis for determining when an action should be dismissed as a sanction.  There must be both a clear record of willful conduct and a finding that lesser sanctions are inadequate.  Betty K Agencies, Ltd., 432 F.3d at 1339.

## III.

Rule 41(b) makes clear that a trial court has discretion to impose sanctions on a party who fails to adhere to court rules.  Fed. R. Civ. P. 41(b).  But that discretion is not unlimited, and the "[d]ismissal of a case with prejudice is considered a sanction of last resort, applicable only in extreme circumstances."  Goforth v. Owens, 766 F.2d 1533, 1535 (11th Cir. 1985).  Dismissal with prejudice

7

is not proper unless "the district court finds a clear record of delay or willful conduct and that lesser sanctions are inadequate to correct such conduct." Betty K Agencies, Ltd., 432 F.3d at 1339. Mere negligence or confusion is not sufficient to justify a finding of delay or willful misconduct. McKelvey v. AT & T Techs., Inc., 789 F.2d 1518, 1520 (11th Cir. 1986). In addition to its power under Rule 41(b), a court also has the inherent ability to dismiss a claim in light of its authority to enforce its orders and provide for the efficient disposition of litigation. See Link v. Wabash R.R. Co., 370 U.S. 626, 630–31, 82 S. Court. 1386, 1389 (1962).

The plaintiff contends that the record contains no evidence that his use of a false name was willful instead of merely negligent. We disagree for the reasons the district court set out in its detailed findings of fact. Our review of that court's findings is only for clear error, and here there clearly is none. The court convincingly rejected each of the arguments that the plaintiff's counsel put forward against a finding of willfulness, and we adopt its reasoning. The plaintiff did not merely slip up. He followed a pattern of deception for a period of at least six years from the time he got the driver's license in 1996 through multiple arrests, convictions, and incarcerations, and filed more than thirty pleadings and motions under a false name in this case. At least some of those pleadings and motions were filed under penalty of perjury. All of them hid his actual identity. Not until the

8

pretrial proceedings were completed and a jury was in the box did the plaintiff finally own up to who he really is.

A trial is not a masquerade party nor is it a game of judicial hide-n-seek where the plaintiff may offer the defendant the added challenge of uncovering his real name. We sometimes speak of litigation as a search for the truth, but the parties ought not have to search for each other's true identity. Rule 10(a) requires that the name of the parties be disclosed in the complaint; Rule 11 forbids lying in pleadings, motions, and other papers filed with the court; and Rule 41(b) provides for dismissal with prejudice as the ultimate sanction for violation of the rules. Fed. R. Civ. Pro. 10(a); Fed. R. Civ. Pro. 11; Fed. R. Civ. Pro. 41(b).

That brings us to the second reason the plaintiff asserts against the district court's order of dismissal. The plaintiff contends that the dismissal was improper because the district court did not explicitly consider lesser sanctions and reject them as inadequate. In addition to finding willful contempt, a district court must consider the possibility of alternative, lesser sanctions. Betty K Agencies, Ltd., 432 F.3d at 1339. However, we have made clear that such consideration need not be explicit. Gratton v. Great Am. Commc'ns, 178 F.3d 1373, 1374 (11th Cir. 1999) ("Dismissal under Rule 41(b) is appropriate where there is . . . an implicit or explicit finding that lesser sanctions would not suffice."); Goforth v. Owens, 766

9

F.2d 1533, 1535 (11th Cir. 1985) ("The record also supports an implicit finding that any lesser sanction than dismissal would not have served the interests of justice.").

It is true that the district court did not explicitly consider and reject lesser sanctions, but a determination that no other sanction would suffice radiates from its explanation for the dismissal. No point would be served by remanding for the court to make explicit that which is inescapably implicit. And the court's implicit determination is correct. Nothing short of putting the plaintiff out of court will properly punish his serious and protracted violation of the rules and adequately deter future violations by other parties. As the Seventh Circuit explained in a similar case, "[f]iling a case under a false name deliberately, and without sufficient justification, certainly qualifies as flagrant contempt for the judicial process and amounts to behavior that transcends the interests of the parties in the underlying action." Dotson v. Bravo, 321 F.3d 663, 668 (7th Cir. 2003). It is conduct that "so violates the judicial process that imposition of a harsh penalty is appropriate not only to reprimand the offender, but also to deter future parties from trampling upon the integrity of the court." Id.; see also Goforth, 766 F.2d at 1535 ("[W]here any other sanction would fail to cure the harm . . . dismissal can be appropriate."). Permitting the plaintiff to pursue his claim would take the punch out of the

10

punishment for pummeling the probity of the judicial system.

The plaintiff contends that the district court erred by considering the prejudice his misconduct had caused to the defendants when it determined the sanction to impose. The legal premise of that assertion has no basis in law, logic, or common sense. The misconduct harmed the judicial system but it also harmed the defendants. It resulted in them proceeding through the litigation for two years without knowing the true identity of the person who was demanding that the court declare they had violated his constitutional rights and force them to pay him damages. Proper discovery and trial preparation are not possible in those circumstances, and jury voir dire is undermined. Because the rules of court protect not just the court but also the parties, it is entirely fitting to consider harm to other parties' interests in determining the sanction to be imposed for a violation of the rules.

In a spell of speciousness, the plaintiff argues that dismissal is too drastic a sanction because the defendants could have uncovered his falsehood earlier if they had diligently pursued their discovery rights. We are as unpersuaded by that argument as we would be by one from an embezzler who blamed his victim for not uncovering the misappropriation scheme earlier.

Dismissal with prejudice is, as we have said, an extreme sanction, see

Goforth, 766 F.2d at 1535, but it is justified in extreme circumstances.  This is another way of saying that the sanction imposed should fit the interests jeopardized and the harm caused by the violation.  In this case it does.  Because courts must be able to preserve the integrity of the judicial process, we have no hesitation in concluding that a party who files suit under a false name and proceeds with that deception right up to trial loses the right to seek judicial relief for the claims he was advancing.

AFFIRMED.

for a Florida driver's license.

Again, it -- Rule 11 is an affirmative duty on him, not us, to be truthful. We're all subject to Rule 11, of course, but the affirmative duty is on him to provide his real name.

THE COURT: In this case, the Plaintiff, whose true name is Cesar Vasquez, filed two separate complaints, both filed under penalty of perjury, under a false name, the false name being Yan Zocarras.

In this case, the Plaintiff filed two separate affidavits of indigency. And in those affidavits of indigency the first portion of the affidavit says, "I" -- and then a blank for the name, in which he filled in the name Yan Zocarras.

Both of those affidavits were filed under a false name.

For the two separate cases concerning five convictions in the State of Florida, both of those convictions were under false names. The first conviction was under the name Yan Michael Zocarras; the second conviction was under the name Carlos Vasquez.

So as he stands today in the Department of Corrections for the State of Florida -- and there have been two Department of Corrections officers here every day, along with the United States marshals, to guard

this state prisoner. He remains under a false name.

The Plaintiff when he was arrested in the underlying facts of this civil rights action gave the false name Carlos Vasquez, which he testified in open court he knew was a lie.

He also testified that he knew that there was an open case against him at the time that he gave the false name of Carlos Vasquez, rather than giving his other false name, which was Yan Michael Zocarras.

While the Plaintiff on recall did testify that he was told he had to use the name under which he was sentenced, and it seems the inference is that since his first conviction was under the false name Yan Michael Zocarras in the State of Florida, he was eventually committed to the Department of Corrections under the false name Yan Michael Zocarras with the alias of Carlos Vasquez and several other aliases.

At no time did the Plaintiff reveal to either the state court system or the State Department of Corrections that his true name is Cesar Vasquez. As far as they're concerned, he's still Yan Michael Zocarras, also known as Carlos Vasquez, also known as Miguel Vasquez, also known as Luis Garcia, Yan M. Zocarras, Yan Michael Zocarras.

Nowhere in the Department of Corrections

information is the name Cesar Vasquez. And in fact, the first time it was revealed to at least the Defendant -- and it may very well be Plaintiff's counsel -- was at the time on direct when his counsel asked him, "Are you known by any other names?"

And he said, "None, other than my true name."

And when asked the question, "What is that true name?" he said, "Cesar Vasquez."

On recall, Mr. Vasquez indicated that he was told that he had to continue to use the name "until my sentence was over. And that's why I put the complaint under that name, because I couldn't have it under my name, as this was the name that I had in prison."

Except he filed the complaint in the case that was originally filed before me of Yan Zocarras, also known as Carlos Vasquez, the name that he was arrested under in the underlying facts. There was nothing that precluded him from putting a second "also known as" and including the name Cesar Vasquez or indicating to the Court in his complaint, "While I'm known as Yan Zocarras in prison, because that's what I was convicted under and sentenced under, my true name is Cesar Vasquez."

He chose not to do that.

At this juncture, the Defendant has indicated

when they made their motion that they don't know what additional information there is under the name Cesar Vasquez. Certainly there's a strong inference that the Plaintiff was hiding that name.

He had obtained a driver's license in 1996 under the name of Yan Zocarras, which raises an inference that he had to present some kind of identification that would enable him to obtain that driver's license. The Plaintiff here started the charade and he continued the charade.

Rule 10 requires the names of the parties; and Rule 11 provides for sanctions concerning false representations made willfully to the Court by presenting to the Court -- and I'm quoting from Rule 11(b) -- "by presenting to the Court whether by signing, filing, submitting or later advocating in a pleading, written motion or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, it is not being presented for any improper purpose. The claims, defenses and other legal contentions are warranted by existing law. The allegations and other factual contentions have evidentiary support."

And Rule 11(a) requires a signature to every

pleading, written motion or other paper either by the attorney or pro se party; and any unsigned paper shall be stricken unless omission of a signature is corrected promptly after being called to the attention of the attorney or the party.

The 7th Circuit in Dotson, D-O-T-S-O-N, versus Bravo, at 321 F.3d 663, a 2003 decision by the 7th Circuit, in a case that is incredibly similar in its factual basis to this case dismissed and approved the dismissal by the District Court, approved the dismissal with prejudice of a 1983 action brought against police officers and the city for malicious prosecution because of the plaintiff's failure to proceed under his true name, which violated the civil rule which mandated that every pleading include the names of all the parties.

And there was a discovery violation, and it was eventually revealed on discovery that the Court also dismissed under the Court's inherent authority to address flagrant contempt.

In that case at Page 668, the 7th Circuit teaches us "Misconduct may exhibit such flagrant contempt for the Court and its processes that to allow the offending party to continue to invoke the judicial mechanism for its own benefit would raise concerns about the integrity and credibility of the civil

justice system that transcends the interest of the parties immediately before the Court. Filing a case under a false name deliberately and without sufficient justification certainly qualifies as flagrant contempt for the judicial process and amounts to behavior that transcends the interests of the parties in the underlying action."

The Court goes on to state, "The instant case represents precisely the situation where one party's conduct so violates the judicial process that imposition of a harsh penalty is appropriate, not only to reprimand the offender, but also to deter fewer parties from trampling upon the integrity of the Court."

In that case, the plaintiff argued that it wasn't wrong to file the case under the name he was convicted and sentenced under in the state criminal proceedings, because everything occurred under that name. The Court stated the fact is that his fraudulent conduct produced such a result and does not justify continuance of the charade in federal court.

"We cannot allow a plaintiff" -- this is at 669 -- "to so abuse the court system in order to avoid criminal justice yet obtain civil reward. There in the Dotson case, it was revealed that he had outstanding

warrants because there was no disclosure of his true name and there's been such prejudice to the defendants. We do not know why this plaintiff did not disclose his true name.

"If the plaintiff sought to expose the truth of what occurred on January 1st, 1998, he should not have begun the lie that now leads to the dismissal of his case. The City and Bravo were prejudiced in their defense of this case despite Shepherd's eventual truth-telling."

There in the Bravo case, it was disclosed in discovery. Here, the disclosure was not until the Plaintiff was on the stand two days ago and he revealed his true name for the first time.

Sitting in this courtroom have been two Florida Department of Corrections officers with the Defendant who have transported him faithfully each and every day after I entered an order having him transported from his institution, his assigned institution, to an institution in Miami so he could be transported every day.

His lawyers that were provided by the Volunteer Lawyers after a tremendous effort by the Court to have the Volunteer Lawyers take this case -- and I commend them for their service in this case, for

volunteering to represent a plaintiff in a civil rights action.

We have two City of Miami police officers who are the Defendants in this case, who I would venture to say have spent a considerable amount of time not only in court, but out of court in the defense of this case. And the United States marshals have been present as well as court security officers for the security of the Court and the persons in the courtroom.

Everything has been done so that a plaintiff could prosecute a civil rights claim under a false name.

And in addition, I have appointed a federal public defender to represent the Defendant regarding the issues that have now arisen before the Court. And a jury was impaneled, who have now been waiting for almost two hours, and have spent the last three days hearing this case. This was all done for someone who did not even represent themselves truthfully before the Court.

Mr. Vasquez has attempted to make a mockery of the justice system. I find that his misrepresentations were willful and deliberate, even in the light most favorable to him, that he was committed under the name Yan Zocarras and had to file his lawsuit. He knew

enough to file a/k/a Carlos Vasquez, his second false name. He easily could have said a/k/a Cesar Vasquez and indicated that name to the Court and to the Defendants.

Because his actions raise such concerns about the integrity and credibility of the civil justice system that transcends the interests of the parties that appear before this Court and because I find his willful and deliberate behavior without justification is flagrant contempt for the judicial process, I find that I must impose a harsh penalty at this juncture, at this stage of the proceedings of dismissal not only to reprimand the offender, but to deter future parties from trampling upon the integrity of the Court.

The integrity of this Court and the judicial system in this country is much too important for it to bend and succumb and to allow someone to prosecute such an important claim under the pretenses of a false name.

I am going to grant the Defendants' motions under Rule 11, Rule 10 and Rule 41(b) for dismissal with prejudice, and I am going to inform the jury that I have dismissed this case because the Plaintiff filed this action under a false name.

Bring the jurors in, please.

(Whereupon, the jury entered the courtroom at

Appendix B



# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 03-22034-CIV-LENARD/KLEIN

**YAN ZOCARAS,**

    Petitioner,

vs.

**DETECTIVE CASTRO, et al,**

    Respondent.

_____/



FILED by _____ D.C.

OCT 1 9 2005

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## ORDER OF DISMISSAL

**THIS CAUSE** is before the Court on Defendants' ore tenus Motion under Federal Rules of Civil Procedure 10, 11 and 41 to Dismiss with Prejudice, made during Jury Trial on September 28, 2005. While no response was filed, both parties had an opportunity to present their respective arguments in open Court in a hearing held September 29, 2005. (See D.E. 211.) The oral ruling made at the hearing is incorporated by reference into this Order and is supplemented as follows:

### I. Factual and Procedural Background

On July 21, 2003, Plaintiff filed a civil rights complaint, pursuant to 42 U.S.C. § 1983, against several City of Miami police officers over an incident involving Plaintiff's arrest and an alleged attack by two police dogs. (Case No.: 03-2204-CIV-LENARD/KLEIN, D.E. 1.) This complaint was filed by Plaintiff under the name Yan Zocaras, a/k/a Carlos Vasquez, and was signed under penalty of perjury. On December 21, 2004, Plaintiff filed

22

another complaint, also pursuant to 42 U.S.C. § 1983, alleging substantially similar facts. (Case No.: 04-23183-CIV-LENARD/KLEIN, D.E. 1.) This second complaint was also filed by Plaintiff under the name Yan Zocaras, a/k/a Carlos Vasquez, and was also signed under penalty of perjury. These cases were ultimately consolidated by the Court on February 15, 2005 under Case No.: 03-22034-CIV-LENARD/KLEIN. (D.E. 8.)

Jury trial began for this consolidated action on September 26, 2005. (See D.E. 210.) During trial, Plaintiff stated while on the witness stand that his name was Yan Zocaras. (Jury Trial Transcript at 3:15-16.) However, when asked on direct if he was known by any other names, Plaintiff revealed for the first time that his true name was Cesar Vasquez. (Id. at 3:17-25.) It is undisputed that Plaintiff had not disclosed his true name on any legal document or at any time prior to Jury Trial during the pendency of this action. Later, on cross-examination, Plaintiff admitted that Yan Zocaras was a false name. (Id. at 31:20-21.) Plaintiff further admitted that he had been issued and signed a Florida Driver's License, a copy of which was entered as Defendant's Exhibit 18, under the false name Yan Zocaras. (Id. at 32:4-6; 48:7 to 49:3.) Plaintiff also admitted that he had given police the false name Carlos Vasquez when he was arrested during the incident in question. (Id. at 32:7-11.) When asked on redirect to explain to the jury why he had used the false name Yan Zocaras, Plaintiff responded that he had been sentenced under the name Yan Zocaras and that when he had asked to change his name, he was told that he had to continue to use that name until his sentence was over. (Id. at 49:11-23.) Thus, Plaintiff testified that he filed his complaint under the false name that he had in prison because he believed he couldn't file it under his

2

true name. (Id. at 49:23 to 50:1.)

At the close of proceedings on September 28, 2005, Defendants made an ore tenus Motion under Federal Rules of Civil Procedure 10, 11 and 41 to Dismiss with Prejudice for Plaintiff's failure to disclose his true name. The next day, the Court conducted a hearing on the Motion and provided Plaintiff an opportunity to provide further testimony on this issue. (Jury Trial Transcript at 52:11-17.) However, the Court required that Plaintiff be advised of and waive his Fifth Amendment rights if he wished to testify. (Id. at 52:17-22.) After being fully apprised of his rights by his counsel and a Federal Public Defender who had been brought in to assist on the matter, Plaintiff chose not to waive his Fifth Amendment rights. (Id. at 63:23 to 64:7.)

## II. Parties' Arguments

In support of their Motion, Defendants rely on Dotson v. Bravo, 321 F.3d 663 (7th Cir. 2003). In that case, under very similar facts, the Court found that dismissal with prejudice by the district court was a proper sanction for Plaintiff's failure to proceed under his true name. (Id. at 669.) Further, Defendants argue that they had no duty to discover Plaintiff's true identity; instead, Federal Rule of Civil Procedure 11 imposes an affirmative duty on the Plaintiff as the architect of his pleadings to be truthful and avoid filings in bad faith. (Id. at 67:21 to 68:1.) Moreover, Defendants argue that Plaintiff's deception was intentional. (Id. at 68:8-9.) In support of this assertion, Defendants point to Plaintiff's Florida Driver's License, obtained years before the instigation of this proceeding, as well as the fact that Plaintiff never disclosed his true name as an alias or otherwise at any time before

3

the Jury Trial. (Id. at 68:2-18.) Finally, Defendants argue that the Court has an inherent authority to prevent the justice system from being undermined by persons perpetuating a fraud. (Id. at 67:15-20.)

In opposition to this Motion, Plaintiff argues that once he was committed under the name Yan Zocaras, the Department of Corrections, pursuant to Florida Administrative Code 33-603.010, would only recognize that name. (Id. at 12-18.) Further, he argues that he could not receive mail under the names Carlos or Cesar Vasquez and was instructed that Yan Zocaras was his name until he finished his sentence. (Id. at 19-24.) Thus, Plaintiff argues that his failure to disclose his true name was the result of negligence or lack of comprehension, rather than willfulness or bad faith, as required for dismissal by the Eleventh Circuit. (Id. at 64:24 to 66:6; Beckwith v. Bellsouth Telecommunications, Inc., 2005 WL 2012667, at *3 (11th Cir).) Plaintiff argues that his willingness to provide his true name at trial further undermines the contention that he acted out of bad faith. (Id. at 66:21 to 67: 6.) Further, Plaintiff attempts to distinguish Dotson, where the plaintiff repeatedly refused to comply with discovery orders, from the instant case where Plaintiff was never served with discovery or interrogatories requesting his full name and other names he'd gone by. (Id. at 66:7-18.) Therefore, Plaintiff argues that Defendants' ignorance as to Plaintiff's true name is the result of their own fault for failing to conduct discovery before the trial. (Id. at 66:19-25.)

III.    Analysis

4

Rule 10(a) of the Federal Rules of Civil Procedure requires that a complaint contain the names of the parties. Fed.R.Civ.P. 10(a). Rule 11(b) stipulates that, by filing a paper with the court, a party is certifying that such paper is not being presented for an improper purpose. Fed.R.Civ.P. 11(b). Rule 11(c) provides for sanctions concerning misrepresentations made in papers filed with the court under Rule 11(b). Fed.R.Civ.P. 11(c). In addition, Rule 41(b) expressly authorizes the involuntary dismissal of a claim for Plaintiff's failure to abide by court orders or the Federal Rules of Civil Procedure. Fed.R.Civ.P. 41(b); State Exchange Bank v. Hartline, 693 F.2d 1350, 1352 (11th Cir. 1982). However, beyond the federal rule, the power of a court to dismiss a claim is inherent in a trial court's authority to enforce its orders and ensure prompt disposition of legal actions. See Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1962); Hartline, 693 F.2d at 1352.

The Eleventh Circuit has held that while a district court has broad powers to impose sanctions for a party's failure to comply with court orders or the Federal Rules, dismissal of an action with prejudice is a "sanction of last resort, applicable only in extreme circumstances." Hartline, 693 F.2d at 1352 (quoting EEOC v. First National Bank, 614 F.2d 1004, 1007 (5th Cir. 1980)). Thus, dismissal is generally reserved for cases of willful disobedience to court orders. Hartline, 693 F.2d at 1352; Beckwith, 2005 WL 2012667, at *3. With these caveats in mind, the Court will proceed to examine the particular facts of the present case.

Here, the Plaintiff, whose true name is Cesar Vasquez, has filed two separate complaints and two separate affidavits of indigency, all under penalty of perjury and all

5

under the false name Yan Zocaras. (Jury Trial Transcript at 69:7-16.) Both of Plaintiff's prior convictions were under false names. (Id. at 69:19-21.) The first conviction was under the name Yan Michael Zocaras; the second conviction was under the name Carlos Vasquez. (Id. at 69:21-24.) When he was arrested in the underlying facts of this civil rights action, Plaintiff testified that he gave a false name, Carlos Vasquez, to police officers and that he knew there was an open case against him at the time he gave that false name. (Id. at 70:6-14.)

While Plaintiff maintains that he was told he had to use the false name under which he was sentenced, he did provide the name Carlos Vasquez as an alias when he filed the instant complaint. (Id. at 70:15-23; D.E. 1.) There was nothing that precluded him from entering a second "also known as" and including the name Cesar Vasquez or indicating to the Court in his complaint, "While I am known as Yan Zocaras in prison, because that is what I was convicted and sentenced under, my true name is Cesar Vasquez." (Id. at 71:16 to 72:5.) That Plaintiff chose not to do this indicates that Plaintiff was purposefully hiding his name. Moreover, the fact that Plaintiff had obtained a driver's license in 1996 under the name of Yan Zocaras raises an inference that he had to present some kind of identification that would enable him to obtain that driver's license (Id. at 72:12-16) and further bolsters the appearance of willful deception. Plaintiff has subsequently maintained this charade for nearly a decade. (Id. at 16-18.)

The Court further finds that Defendants have been highly prejudiced by this deception, as they have indicated that they are not aware of what additional information is available under the name Cesar Vasquez. (Id. at 72:7-10.) At no time did the Plaintiff reveal

6

to either the state court system or the State Department of Corrections that his true name was Cesar Vasquez. (Id. at 70:24 to 71:1.) As far as these entities are concerned, he's still Yan Michael Zocaras, also known as Carlos Vasquez, also known as Miguel Vasquez, also known as Luis Garcia, also known as Yan M. Zocaras. (See Id. at 71:1-5.) Thus, the first time the name Cesar Vasquez was revealed to Defendants - and possibly even Plaintiff's own counsel - was during Jury Trial on direct. (Id. at 71:7-12.)

Though no case in the Eleventh Circuit contains facts substantially on point, the Seventh Circuit case of Dotson v. Bravo, 321 F.3d 663 (7th Cir. 2003), is strikingly similar in its factual basis and legal framework to the case at hand. In that action, the Court of Appeals approved the dismissal with prejudice by the District Court of a § 1983 action brought against police offers and the city for malicious prosecution because the plaintiff's failure to proceed under his true name violated the civil rule mandating that every pleading include the names of all the parties. Id. at 665-66. While the Dotson court cited Federal Rule of Civil Procedure 37(b) as a rule-based justification for the sanction of dismissal, it also found that a court's inherent authority to rectify abuses to the judicial process allowed sanctions for certain violations. Id. at 667 (citing Chambers v. NASCO, Inc., 501 U.S. 32, 49 (1991)). The court held that filing under a false name deliberately and without sufficient justification qualifies as such flagrant contempt for the court and its processes that "to allow the offending party to continue to invoke the judicial mechanism for its own benefit would raise concerns about the integrity and credibility of the civil justice system that transcend the interests of the parties immediately before the court." Id. at 668. Thus, the imposition of the

7

admittedly harsh penalty of dismissal with prejudice was appropriate, not only to reprimand the offender, but also to deter future parties from similarly trampling upon the integrity of the court. Dotson, 321 F.3d at 668.

In Dotson, the Plaintiff also made the argument that it wasn't wrong to file the case under the false name because he had been sentenced and convicted in criminal proceedings under that name. Id. However, the court dismissed that argument, noting that Plaintiff's own fraudulent conduct "produced such a result and does not justify continuance of the charade in federal court." Id. The Dotson court went on to find that Defendants had been prejudiced by Plaintiff's deception and that Plaintiff's subsequent disclosure of his true name had not ameliorated this harm. Id. at 669. The court concluded that even though the plaintiff's case might have some merit, "we cannot allow a plaintiff to so abuse the court system in order to avoid criminal justice, yet obtain civil reward."

While the false name in Dotson was disclosed during discovery, the misrepresentation in the instant case was not discovered until Plaintiff took the stand during trial. (Jury Trial Transcript at 75:23 to 76:1.) Thus, the resources that were expended so that Plaintiff could prosecute his civil case have been even more significant than in Dotson. Two Florida Department of Corrections officers were present each day of Plaintiff's three-day trial to transport him to and from the courtroom. (Id. at 76:2-8.) This Court entered an order transferring Plaintiff from his assigned institution to an institution in Miami to facilitate this transportation. (Id.) Plaintiff's lawyers were present and provided by the Volunteer Lawyers after a tremendous effort by the Court to secure representation for this Plaintiff. (Id. at 76:9-

8

29

14.) Two City of Miami police officers who are the Defendants in this case have likely spent a considerable amount of time both in and out of court in the defense of this case. (Id. at 76:15-19.) The United States Marshals were present in the courtroom as security officers for the benefit of the Court and the persons in the courtroom. (Id. at 76:20-23.) In addition, a Federal Public Defender was appointed by the Court to represent the Plaintiff once the Fifth Amendment issues arose before the Court. (Id. at 77:2-4.) Finally, a jury was impaneled and spent nearly three days hearing the case. (Id. at 77:5-9.) All of this was done so that Plaintiff could prosecute a civil rights claim under a false name.

Plaintiff Cesar Vasquez has attempted to make a mockery of the justice system. The Court finds that his misrepresentations were willful and deliberate, even in the light most favorable to him, that he thought he was required to file the case under the name Yan Zocaras. Plaintiff knew enough to file "a/k/a Carlos Vasquez," a second false name, and could easily have added "a/k/a Cesar Vasquez" or otherwise indicated that name to the Court and Defendants. Because his actions raise concerns about the integrity and credibility of the civil justice system that transcend the interests of the parties that appear before this Court, and because this willful and deliberate behavior is without justification and in flagrant contempt of the judicial process, this Court must impose the harsh penalty of dismissal. At this stage of the proceedings, dismissal with prejudice is necessary, not only to reprimand the offender, but to deter future parties from trampling upon the integrity of the Court. The integrity of this Court and the judicial system in this country is much too important for it to bend and succumb to allow someone to prosecute such an important claim under the

9



pretenses of a false name. Accordingly, it is hereby:

**ORDERED AND ADJUDGED** that

1. Defendants' ore tenus Motion under Federal Rules of Civil Procedure 10, 11 and 41 to Dismiss with Prejudice, made during Jury Trial on September 28, 2005, is **GRANTED**.

2. This cause is **DISMISSED with prejudice**.

3. This case is now **CLOSED**.

**DONE AND ORDERED** in Chambers in Miami, Florida, this _19_ day of October, 2005.

_Joan A. Lenard_
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**

cc:     United States Magistrate Judge Theodore Klein

All Counsel of Record

03-22034-CIV-LENARD/KLEIN

10

31